1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

NICOLAS PABLO CALMO,

        Petitioner,

   v.

JEFFERSON SESSIONS, in his official
capacity as Attorney General of the United
States; KIRSTJEN NIELSEN, Secretary of
the United States Department of Homeland
Security; DAVID JENNINGS, in his official
capacity as Field Office Director; and
STEVEN L. DURFOR, in his official capacity
as Sheriff-Coroner of Yuba County in charge
of the Yuba County Jail,

        Respondents.

_____/

No. C 17-07124 WHA

**ORDER DENYING SECTION
2241 PETITION**

**INTRODUCTION**

      In this Section 2241 action, petitioner seeks an order for his immediate release from
immigration custody or, in the alternative, a further bond hearing. For the reasons below, the
petition is **DENIED**.

**STATEMENT**

      Having received a bond hearing before an immigration judge, and a de novo review by
the Board of Immigration Appeals, the issue here is whether that bond hearing and de novo
review provided the petitioner with sufficient due process. This order concludes that they did.

      Petitioner Nicolas Pablo Calmo, originally from Guatemala, received asylum in the
United States and later became a legal permanent resident. In February 2016, ICE issued a

notice to appear charging petitioner with removability based on a prior criminal conviction under Section 32 of the California Penal Code, accessory after the fact. ICE took petitioner into custody pursuant to 8 U.S.C. § 1226(c), which provision mandates detention of certain "criminal aliens" pending their removal proceedings.

In December 2016, an immigration judge found that petitioner's conviction constituted an "aggravated felony" under 8 U.S.C. § 1101(a)(43)(S). The immigration judge denied petitioner's application for asylum, withholding of removal, and protection under the Convention Against Torture and ordered petitioner removed to Guatemala. Petitioner's appeal on the merits remains pending before the Board of Immigration Appeals.

Petitioner received a bond hearing in August 2017 pursuant to *Rodriquez v. Robbins*, 804 F.3d 1060 (9th Cir. 2015) ("*Rodriguez III*"). The immigration judge denied bond after finding that petitioner was a danger to the community and a flight risk. Petitioner appealed the denial of bond to the BIA.

In January 2018, the BIA dismissed petitioner's appeal of the detention order. The BIA explained that in determining petitioner posed a danger to the community, the immigration judge had considered petitioner's admitted gang membership, his prior conviction for battery, and the facts underlying petitioner's accessory-after-the-fact conviction, which involved petitioner "brandishing a loaded firearm in front of multiple bystanders at a taco truck" (Dkt. No. 28-11). The BIA concluded:

> [O]n our de novo review, we do not find that [petitioner] merits release on discretionary bond, even considering the prolonged nature of his detention to date. We do not read the Ninth Circuit's decision in *Rodriguez v. Robbins* as supporting a decision to release a dangerous alien on discretionary bond simply because he has already been detained in the custody of the DHS for a lengthy period of time.

This habeas action began just before the BIA's January decision. On February 27, shortly after briefing on the original habeas petition concluded, the United States Supreme Court issued its decision in *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018), which reversed our court of appeals' decision in *Rodriguez III*. In response to the undersigned judge's request for supplemental briefing on the import of *Jennings* to petitioner's claims, petitioner requested leave to file an amended petition. An order granted petitioner's request and ordered the

2

government to show cause why the amended petition should not be granted. The government timely filed its response to the amended petition and petitioner submitted his traverse. Petitioner has now been detained in immigration custody for 28 months (although he has received a bond hearing before the immigration judge and de novo review by the BIA). His petition raises claims for relief under the Fifth Amendment and the Eighth Amendment.

## ANALYSIS

**1.** **FIFTH AMENDMENT CLAIM.**

    **A.** **Section 1226(c) Governs Petitioner's Detention.**

Petitioner first argues that Section 1226(a) — not Section 1226(c) — governs petitioner's detention. This order disagrees.

Multiple provisions within the Immigration and Nationality Act govern the detention of non-citizens awaiting removal from the United States. Section 1226(a) provides for discretionary detention pending removal. Detention under Section 1226(c), by contrast, is mandatory. Section 1226(c) accordingly *requires* the detention of a non-citizen who, as relevant here, is removable by reason of having committed an offense listed in Section 1101(a)(43)(S). Such individuals may be released only if the government deems it "necessary" for witness-protection purposes. *Jennings*, 138 S. Ct. at 838.

In a written order, the immigration judge concluded that petitioner's accessory-after-the-fact conviction constituted an "aggravated felony" under Section 1101(a)(43)(S), which includes within the definition of aggravated felony any offense "relating to obstruction of justice . . . for which the term of imprisonment is at least one year." Based on this determination, and because the immigration judge denied petitioner's request for relief under the Convention Against Torture, petitioner was ordered removed to Guatemala. This removal order is the subject of petitioner's currently-pending appeal to the BIA.

Here, petitioner argues that Section 1226(a) governs his detention because his conviction for accessory after the fact is not an "aggravated felony" as defined in the INA. Importantly, however, the REAL ID Act of 2005 eliminated district court habeas jurisdiction over orders of removal. Section 1252(a)(5) provides that "a petition for review filed with an

appropriate court of appeals . . . shall be the sole and exclusive means for judicial review of an order of removal[.]"  The Act further provides that "[j]udicial review of all questions of law and fact . . . arising from any action taken or proceeding brought to remove an alien from the United States" is only available upon review of a final removal order.  *Id.* at § 1252(b)(9).

Although petitioner seeks relief only from immigration detention without reaching the merits of the order of removal, "this portion of his habeas petition is wholly intertwined with the merits of his removal order."  *Singh v. Holder*, 638 F.3d 1196, 1211 (9th Cir. 2011). Accordingly, in this case, we cannot review one without reviewing the other.  Citing *Nadarajah v. Gonzales*, 443 F.3d 1069 (9th Cir. 2006), petitioner argues that the REAL ID Act's jurisdiction-stripping provisions do not apply because there is no "final order of removal" in this case.  But in *Nadarajah*, there was no removal order at all.  Although neither party had raised the question of jurisdiction, our court of appeals found that a petitioner who had "prevailed at every administrative level" and had been granted asylum, yet remained in detention for five years, could file a habeas petition in district court notwithstanding Section 1252(b)(9).  Here, by contrast, not only is petitioner subject to a removal order, but "this portion of his habeas petition does nothing more than attack the [immigration judge's] removal order."  *Singh*, 638 F.3d at 1211 (citation and internal quotation omitted).  The undersigned judge accordingly lacks jurisdiction to review this challenge.

Petitioner can, however, challenge the constitutionality of his continued detention under Section 1226(c), as now discussed.

**B.**      **Petitioner Has Received a Constitutionally Adequate Bond Hearing.**

Prior to the Supreme Court's recent decision in *Jennings*, our court of appeals' decision in *Rodriguez III* governed petitioner's right to a bond hearing.  Under *Rodriguez III*, as a matter of statutory interpretation of the INA, mandatory detention pursuant to Section 1226(c) automatically converted to discretionary detention pursuant to Section 1226(a) after six months of detention.  804 F.3d at 1079.  Accordingly, a non-citizen subjected to detention of six months or more was entitled to a bond hearing.  The government was required to provide a new bond hearing every six months, at which hearing the government bore the burden of

1    proving by clear and convincing evidence that the detained individual was either a danger to

2    the community or a flight risk.  *Id.* at 1089.

3        In *Jennings*, the Supreme Court held that *Rodriguez III* misapplied the canon of

4    constitutional avoidance, and that Section 1226(c) could not plausibly be construed to include

5    an implicit six-month time limit on the length of mandatory detention.  138 S. Ct. at 846–47.

6    And as for Section 1226(a), the Supreme Court concluded that nothing in the statute's text

7    supported the imposition of the procedural protections ordered in *Rodriguez III* — "namely,

8    periodic bond hearings every six months in which the Attorney General must prove by clear

9    and convincing evidence that the alien's continued detention is necessary."  *Id.* at 847–48.

10       While *Jennings* addressed the right to a bond hearing under Section 1226(c) as a matter

11   of statutory construction, here, petitioner argues that his prolonged detention without an

12   adequate bond hearing violates the Due Process Clause.  In *Demore v. Kim*, 538 U.S. 510

13   (2003), the Supreme Court held that mandatory detention under Section 1226(c) for the "brief

14   period necessary" to complete removal proceedings is "constitutionally permissible" under the

15   Fifth Amendment.  In so deciding, the Supreme Court cautioned that such detention has "a

16   definite termination point" and typically "lasts roughly a month and a half in the vast majority

17   of cases in which it is invoked, and about five months in the minority of cases in which the

18   alien chooses to appeal."  *Id.* at 529–30.  *Demore* accordingly concluded that the six-month

19   detention at issue constituted reasonable "temporary" confinement.  *Id.* at 530–31.  Petitioner,

20   however, stresses that he has been in detention for 28 months, not six, as in *Demore*.

21       Our court of appeals has expressed skepticism that "*Demore*'s limited holding that

22   Congress could permissibly authorize 'brief' detention without procedural protections can be

23   extended to encompass" longer periods.  *Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d

24   942, 950 (9th Cir. 2008).  But it has yet to squarely address whether mandatory detention

25   without a bond hearing violates the Due Process Clause once detention exceeds six months.

26   Indeed, this is one of the questions that *Jennings* left open on remand (and that very

27   constitutional issue is currently proceeding before our court of appeals).  *Rodriguez v.*

28   *Jennings*, 887 F.3d 954, 956 (9th Cir. 2018).  This order presumes that an individual's

prolonged detention of 28 months without a bond hearing would violate the Due Process Clause. Here, however, petitioner received a constitutionally adequate bond hearing in August 2017, and received de novo review of that decision in January 2018.[1]

At his 2017 bond hearing, petitioner, represented by counsel, introduced evidence and testified on his own behalf. In his written order denying bond, the immigration judge cited *In re Guerra*, 24 I. & N. Dec. 37 (B.I.A. 2006), and required the government to "prove by clear and convincing evidence that [petitioner was] a danger to the community, a risk of nonappearance, or [was] otherwise a poor bail risk" (Dkt. No. 28-10). Under *Guerra*, an immigration judge may consider a number of factors in making a bond decision, including:

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee persecution or otherwise escape authorities, and (9) the alien's manner of entry to the United States.

Petitioner does not contend that the immigration judge applied the wrong legal standard. Rather, petitioner argues that his bond hearing was constitutionally inadequate because the immigration judge — in concluding that petitioner was a danger to the community and a flight risk — failed to consider relevant evidence or otherwise mischaracterized evidence in the record. Although "[t]he Attorney General's discretionary judgment regarding the application of [Section 1226] shall not be subject to review," 8 U.S.C. § 1226(e), district courts have habeas jurisdiction to review bond hearing determinations for constitutional claims and legal error. *Singh*, 638 F.3d at 1202.

*First*, petitioner argues that the immigration judge failed to consider petitioner's employment history, his admission into a strict residential alcohol rehabilitation program, or the length of petitioner's detention. The immigration judge heard testimony regarding petitioner's employment history and a letter evidencing petitioner's acceptance into a

---

[1] Petitioner does not argue that, had he received a constitutionally adequate bond hearing in August 2017, he would thereafter be entitled to *new* bond hearings based on the incremental length of his detention.

residential rehabilitation program was admitted into the record. The immigration judge also acknowledged that, pursuant to *Rodriguez III*, the length of petitioner's detention needed to be taken into account — albeit while expressing uncertainty as to how that factor should be weighed (Dkt. No. 28-7 at 22–25). Although the immigration judge did not explicitly reference these points in his written order, he ultimately concluded that "[o]n the facts of this case . . . no condition, combinations of conditions, or 'alternatives to detention,' can reasonably assure the safety of the community."

A district judge may not second-guess the immigration judge's weighing of the evidence. Nonetheless, this order finds no clear legal error in the immigration judge's determination that petitioner posed a danger to the community. Here we have an admitted gang member with a loaded gun. That alone is sufficient to show a danger to the community. Add to that the drinking problem and further criminal history and there is no room for doubt.

At the hearing on the instant petition, petitioner's counsel cited *Cole v. Holder*, 659 F.3d 762 (9th Cir. 2011), for the proposition that the immigration judge's written order should have discussed each item of evidence submitted during petitioner's bond hearing. In *Cole*, our court of appeals addressed the denial of relief (on the merits) under the Convention Against Torture, which requires consideration of "*all* evidence relevant to the possibility of future torture." 8 C.F.R. § 1208.16(c)(3) (emphasis added). That decision explained that "[w]hen nothing in the record or the BIA's decision indicates a failure to consider all the evidence, a general statement that the agency considered all the evidence before it may be sufficient." *Id.* at 771 (citation and internal quotation marks omitted). But "where potentially dispositive testimony and documentary evidence is submitted, the BIA must give reasoned consideration to that evidence." *Id.* at 772. Here, no dispositive evidence required further discussion. Nor was this a decision on the merits of petitioner's request for relief under the Convention Against Torture. As the BIA concluded in its de novo review, petitioner's acceptance into the residential rehabilitation program "[did] not mitigate the potential for danger," and petitioner posed a risk of future danger "even considering the prolonged nature of petitioner's detention to date" (Dkt. No. 28-11).

*Second*, petitioner argues that the immigration judge mischaracterized the conduct underlying petitioner's conviction for accessory after the fact. Petitioner similarly argues that the record lacked evidence to support the immigration judge's characterization that petitioner was "actively involved" with a street gang. The immigration judge found:

> [Petitioner] was convicted in 2014 for being an accessory after the fact, although in reality there was no principal, and what the [petitioner] actually did was to accost two individuals at a taco truck and brandish a loaded, high-caliber firearm at them. [Petitioner] did not deny having possession of the gun, but explained that he had obtained the gun (illegally) because he had seen black people attack his friends (*i.e.* his fellow Norteno gang members) and he wanted to be able to "protect himself" through the use of his firearm.

Petitioner takes issue with the word "accost," but petitioner admitted that he brandished his firearm by "show[ing] it in the air." Petitioner also admitted that he was currently a member of a "clique within the Nortenos gang." Regardless of the terminology used, this order finds that in light of the undisputed evidence any differences in interpretation of the facts remained well within the province of the immigration judge.

This order does not minimize the amount of time petitioner has spent in custody pending his removal proceedings. Nor does it minimize the possibility that, ultimately, the BIA or our court of appeals may determine that petitioner is not removable. Nonetheless, the undersigned judge has limited jurisdiction to hear petitioner's detention claims, and as to that issue, petitioner has received the process he was due — an individualized determination by an immigration judge who identified the correct legal standard and determined that petitioner posed a danger to the community. This determination is supported by the record. Petitioner also received a de novo review by the BIA. This order need not reach petitioner's challenge to the immigration judge's additional determination that petitioner posed a flight risk. Petitioner's claim under the Fifth Amendment is **DENIED**.

### 2. EIGHTH AMENDMENT CLAIM.

In his second claim for relief, petitioner asserts that his prolonged detention violates the Eighth Amendment. The removal process is a civil proceeding and not criminal punishment. *INS v. Lopez–Mendoza*, 468 U.S. 1032, 1039 (1984); *Agyeman v. INS*, 296 F.3d 871, 886 (9th Cir. 2002). Petitioner is therefore not entitled to habeas relief on the ground that his

immigration detention violates the Eighth Amendment's prohibition against cruel and unusual punishment. This claim is accordingly **DENIED**.

## CONCLUSION

For the reasons stated, petitioner's requested relief under Section 2241 is **DENIED**.


**IT IS SO ORDERED.**


Dated: June 12, 2018.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE